Russell Box Company, et al. [1] v. Commissioner. Russell Box Co. v. Commissioner
Docket Nos. 28703, 28704, 28705, 28706, 28707.
United States Tax Court
1953 Tax Ct. Memo LEXIS 395; 12 T.C.M. (CCH) 46; T.C.M. (RIA) 53025; January 29, 1953
*395 On the basis of the facts presented, held, that 1. The cost of erecting a substantial wire mesh fence completely enclosing a manufacturing plant was a capital expenditure. 2. The members of a partnership were not entitled to the benefit of a bad debt deduction for failure of proof either (a) that there occurred in the taxable year any identifiable event rendering the alleged debt worthless, or (b) that the alleged debt had any value at the beginning of the taxable year, or (c) that a valid debt ever existed. 3. Respondent did not err in denying a deduction in the year 1943 for an alleged loss on the sale of certain personal property for failure of proof that the sale was bona fide. O. Walker Taylor, Esq., 31 Milk St., Boston, Mass., for the petitioners. William C. *396 W. Haynes, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion The respondent determined deficiencies against the petitioners as follows: Taxpayer
Year
Deficiency
Russell Box Company
1942 Income Tax
$11,975.65
Declared Value
Excess Profits Tax
3,977.11
Excess Profits Tax
6,896.92
1943 Income Tax
None
Declared Value
Excess Profits Tax
2,730.18
Excess Profits Tax
59,494.91
Harlow M. Russell
1943 Income Tax
16,676.82
Susan V. Russell
1943 Income Tax
16,678.67
Waldo B. Russell and Marion P. Russell
1943 Income Tax
5,979.53
Melvin H. Sidebotham
1943 Income Tax
1,720.72 *
These cases have been consolidated for hearing and decision. At the hearing petitioners' attorney conceded certain adjustments made by the respondent which had been assigned as error in the petitions. The following issues remain for our decision: 1. Was the cost incurred in 1942 in erecting a fence around a manufacturing plant a capital expenditure or an ordinary and *397 necessary business expense? 2. Did the respondent err in denying a deduction for an alleged bad debt in 1943 owed to the individual petitioners' partnership, Russell & Sidebotham, by a related corporation, Sterling Paper Converting Company? 3. Was there a bona fide sale in the taxable year 1943 of certain personal property owned by the Russell Box Company, thereby giving rise to a deductible loss in that year? Findings of Fact Part of the facts were stipulated and they are so found. At the time of filing their petitions, petitioners Harlow M. Russell and Susan V. Russell, husband and wife, resided in Chelsea, Massachusetts; petitioners Waldo B. Russell and Marion P. Russell, husband and wife, resided at Saugus, Massachusetts; and petitioner Melvin H. Sidebotham resided at Winchester, Massachusetts. All of these petitioners filed their income tax returns for the taxable periods here involved on the calendar year basis with the collector of internal revenue for the district of Massachusetts. Petitioner Russell Box Company was incorporated under the laws of the State of Massachusetts and filed its corporate income, declared value excess profits tax and excess profits tax returns *398 for the taxable periods here involved on the calendar year basis with the collector of internal revenue for the district of Massachusetts. The partnership of Russell & Sidebotham and the partnership of Russell & Russell each filed information returns for the fiscal year ended January 31, 1943, with the collector of internal revenue for the district of Massachusetts. Petitioner Waldo B. Russell is a brother of petitioner Harlow M. Russell. Included among the business enterprises which the individual petitioners were operating in 1942 and 1943 are the following: 1. A partnership under the name of "Russell & Sidebotham," composed of Harlow M. Russell and Melvin H. Sidebotham. The articles of partnership dated February 1, 1939, provided that the partnership was to engage in the business of manufacturing machinery generally, to develop, manufacture and sell machinery, and to manufacture and sell paper products, paper boxes and containers of all types, and to buy and sell patents and patent rights in inventions and to issue patent licenses therefor and to receive and collect royalties. In 1942 this partnership was doing business under the name of "Specialty Automatic Machine Company" *399 and was engaged in machining tools, practically all of its work being covered by war contracts. The site of its operations was one-half of the first floor of a plant located on Boston Avenue, Medford, Massachusetts. 2. A partnership under the name of "Russell & Russell," composed of Waldo B. Russell and Susan V. Russell, which was formed on February 1, 1939. The articles of partnership provided that this partnership was created for exactly the same purposes as was Russell & Sidebotham. In practice, however, at least for the fiscal year February 1, 1942-January 31, 1943, the income of the partnership Russell & Russell consisted solely of a percentage of the profits of Russell & Sidebotham paid over in accordance with a provision of an agreement between the two partnerships which provided that Russell & Sidebotham should pay Russell & Russell one-half of the former's net profits derived from the use, lease and sale of any machinery owned or controlled by the latter. 3. Russell Box Company, a corporation and a petitioner herein. This company was engaged in the manufacture of paper boxes and like articles and its plant of operations was the remainder of the four-story building on *400 Boston Avenue, Medford, Massachusetts, in which the operations of Specialty Automatic Machine Company were conducted. The outstanding stock of this corporation during the years 1942 to 1944, inclusive, was as follows: Number of Shares
Par Value
Common
5,000
None
Preferred
4,000 $100
In the year 1942, 4,950 shares of the common stock of the Russell Box Company were owned by H. M. Russell & Company, a trust. Harlow M. Russell and Susan V. Russell were sole and equal beneficiaries of this trust during that year. The remaining 50 shares of common stock were owned by a person named Estelle L. Rice. On March 10, 1943, after the trust, H. M. Russell & Company, had transferred its common stock to the individual petitioners herein, the stock ownership of Russell Box Company was as follows: Number of Shares
Common
Preferred
Harlow M. Russell
1,238
1,423
Susan V. Russell
1,238
1,424
Waldo B. Russell
1,237
877
Melvin H. Sidebotham
1,237
276
Estelle L. Rice
50
5,000
4,000
4. Sterling Paper Converting Company, a corporation. In 1942 100 per cent of the stock of this corporation was owned by H. M. Russell & Company trust. *401 On December 31, 1942, all of these shares were transferred to the Russell Box Company. During the years 1942 and 1943 this corporation was engaged in the manufacture of paper boxes and like articles and had a plant located in East Rutherford, New Jersey. In 1942 there was built around the Medford plant, which housed the Russell Box Company and the Specialty Automatic Machine Company, a substantial wire mesh fence which was supported by steel posts and extended for about 1,200 feet, completely enclosing the building on all sides. Prior to the time this fence was erected the building was exposed except for an old wooden fence at the rear of the property and a wire fence on one side. The new fence was erected mainly to protect against sabotage the premises of the Specialty Automatic Machine Company, which was engaged in war work and a considerable portion of its work was carried on during the nighttime. The fence served this purpose, although its structure was such that at one end of the elevator entrances to the building difficulty was experienced in loading and unloading trucks. The cost of erecting this fence was a capital expenditure in the year 1942. The premises of Sterling *402 Paper Converting Company (hereinafter usually referred to as Sterling) were leased from the Borough of East Rutherford, New Jersey. Sterling made substantial improvements in the premises as required by the terms of the lease. The amount of these improvements, less depreciation, as shown on Sterling's 1942 income tax return, was $57,106.76. The original five-year term of the lease expired on December 31, 1940. On September 30, 1940, in accordance with an option contained in the lease which permitted the lessee at any time after the first day of January 1939 to renew the lease and extend the term thereof for a period of 99 years, Sterling properly notified the Borough of East Rutherford (hereinafter referred to as the lessor) that it was exercising this option effective October 1, 1940. On December 2, 1940, the lessor notified Sterling that its notice with respect to the extension of the term of the lease was considered null and void and of no effect, and on the same date the mayor and council of the Borough of East Rutherford passed a resolution empowering the attorney for the borough to proceed to institute such proceedings as might be necessary to evict Sterling and to obtain a final *403 determination as to the legality of the lease agreement. On March 1, 1943, Sterling was notified to quit and surrender the premises. An action at law was commenced in the Bergen County Circuit Court in April 1943 by the lessor to obtain possession of the premises. Sterling contested this action and filed a counterclaim for the value of the leasehold improvements. After the court had ruled on certain motions favorably to Sterling, the action and counterclaim were dismissed without cost to either party and the property was sold at public auction to Sterling for $28,000 in March 1944. Sterling later sold the property for $60,000. The general ledger of Russell & Sidebotham shows an account receivable - Sterling Paper Converting Company with a debit balance as of December 31, 1942, of $55,320.71. The ledger of Russell & Sidebotham shows a credit entry to the account of Sterling Paper Converting Company A7D in the amount of $55,320.71 on January 31, 1943. The general ledger of Russell & Sidebotham shows a note receivable account - Sterling Paper Converting Company with a debit balance as of December 31, 1942, of $10,520.07. The ledger of Russell & Sidebotham shows a credit entry to the *404 account note receivable of Sterling Paper Converting Company as of January 1943 in the amount of $10,520.07. The journal of Russell & Sidebotham shows the following entry: Debit
Credit
Jan. 31, 1943
Bad Debts
$65,840.78
Sterling
$55,320.71
Notes
Receivable
10,520.07
To charge off uncollectible account and note.
Petitioner Harlow M. Russell instructed his accountant to charge these accounts off as a bad debt as of January 31, 1943, the end of Russell & Sidebotham's fiscal year. The income tax return of Sterling for the calendar year 1942 showed net sales of $314,886.42 as compared with net sales of $478,260.27 on its 1941 return and $31,567.54 on its 1943 return. The balance sheets, Schedule L. attached to the 1942 return of this company, show the following as of December 31, 1942: Assets
Current assets
$68,505.22
Deferred charges
6,103.71
Depreciable assets (its lease-
hold improvements)
57,106.76
Liabilities
Accounts payable
$ 7,234.78
Accrued expenses
519.33
Other liabilities
9,277.18
Capital stock (including sur-
plus)
114,684.40 In the same schedule the balance sheets at the beginning of this *405 taxable year (1942) show a long-term note of $10,520.07, the amount of the note allegedly owed to Russell & Sidebotham, and other liabilities totaling $55,338.98. A comparison of the two balance sheets showed capital stock (including surplus) increased from $3,903.49 at the beginning of the year to $114,684.40 on December 31. It was stated on the return that this increase was due to the cancellation of certain liabilities in the amount of $107,488 and is reflected in the following journal entry on the books of Sterling on December 31, 1942: Debit
Credit
Russell Box Company - Ac-
count Payable
$39,302.33
Russell & Sidebotham - Ac-
count Payable
55,302.60
Specialty Automatic Ma-
chine Co. - Account Pay-
able
2,363.00
Notes Payable
10,520.07
Surplus Adjustment
$107,488.00
In the latter part of 1943, inasmuch as Sterling was faltering due to labor problems and operational difficulties, Harlow M. Russell decided to sell the entire plant and equipment as a going concern and placed it in the hands of several agents, including Garibaldi Associates. The latter agent interested a chemical company, Patent Chemicals, Inc., in the property. However, Patent *406 Chemicals found that it was not interested in certain machinery in the plant used by Sterling but owned by the Russell Box Company. An abortive attempt was made by Garibaldi and Patent Chemicals to work together in an attempt to sell the machinery. Finally, on December 29, Patent Chemicals agreed to purchase the Sterling Paper Converting Company's interest, less the machinery in question, and made a down payment of $5,000 by check dated December 30, 1943. The parties agreed, however, that Patent Chemicals retained the right to rescind the agreement if it found the premises unsuitable. Finding the property unsuitable for its purposes, within the time allotted, Patent Chemicals notified the Russell interests the agreement was rescinded. The amount of Patent Chemicals' down payment, less the forfeiture of $50, was returned to it by check of the Specialty Automatic Machine Company dated March 6, 1944, in the amount of $4,950. On December 29, 1943, a bill of sale covering the machinery was executed naming Douglas Downs, an employee of Garibaldi Associates, as the buyer. Legal title was passed to Douglas Downs and an entry was made on the books of Russell Box Company evidencing this sale. *407 The entry showed a down payment of $5,000 and a mortgage payable running to Russell Box Company of $25,000, the total consideration being $30,000. Russell Box Company received no consideration from Downs for this property, nor did Downs ever consider himself liable to pay anything therefor. His only interest in the transaction was to obtain a commission from the sale of the property when and if a buyer could be found. Downs never acknowledged nor signed any note evidencing his liability to pay for the machinery; nor did he ever obtain possession of it. He agreed with Harlow M. Russell that they would both continue their efforts to find a purchaser for the property. As agreed, Downs could not sell the property for less than $30,000 and he understood that if the property was sold for more he was entitled only to his commission, the remainder of the profit going to the Russell interests. These parties further agreed that if a purchaser was not found within 30 days title to the property was to be transferred to Harlow M. Russell and Downs would receive a net payment of $500. A purchaser was not found, legal title to the property was transferred to Harlow M. Russell, who thereafter sold *408 the property to the Container Corporation of America on August 30, 1944, for $30,000. Opinion HILL, Judge: The first of the three issues presented for our decision concerns the question of whether or not the cost of the fence erected about the plant which housed the Specialty Automatic Machine Company and the Russell Box Company was a capital expenditure [2] or deductible in full as an ordinary and necessary business expense. This is a question of fact. The evidence indicated that the fence in question was of a permanent-type structure. When the parties built it they intended it to last at least as long as the Specialty Automatic Machine Company had war contracts, an indefinite period of time. The principal purpose of this fence was to protect the operations of that company against sabotage. It also replaced other older fences on two sides of the building. That the petitioners were not satisfied with the construction of the fence to the extent that it interfered with certain entrances to the plant is no basis for the determination that the cost of the fence was an ordinary and necessary business expense. Our findings of fact that the cost was a capital expenditure disposes of this *409 issue. The second issue presented concerns a claimed bad debt arising out of an alleged debt owed to Russell & Sidebotham by Sterling. The alleged debt was charged off on the partnership's books as of January 31, 1943, the last day of its fiscal year. Because the evidence presented is so confusing we have been unable to make a finding as to what, if any, basis existed for the alleged debt. With respect to bookkeeping entries, the parties stipulated as follows: "44. The surplus adjustment account in the ledger of the Sterling Paper Converting Co. as of December 31, 1942 shows a credit entry of $107,488. "45. The general ledger of Russell & Sidebotham shows an account receivable - Sterling Paper Converting Co. with a debit balance as of December 31, 1942 of $55,320.71. "46. The ledger of *410 Russell & Sidebotham shows a credit entry to the account of Sterling Paper Converting Co. A7D in the amount of $55,320.71 on January 31, 1943. "47. The general ledger of Russell & Sidebotham shows a note receivable account - Sterling Paper Converting Co. with a debit balance as of December 31, 1942 of $10,520.07. "48. The ledger of Russell & Sidebotham shows a credit entry to the note receivable of Sterling Paper Converting Co. as of January 1943 in the amount of $10,520.07. "49. The journal of Russell & Sidebotham shows the following entry: Debit
Credit
'Jan. 31, 1943
Bad Debts
$65,840.78
Sterling
$55,320.71
Notes Receivable
10,520.07
To charge off uncollectible account and
note.'"
We believe that the form of the stipulation is clear. It states as a fact only that the entries in the amounts given were made and appear on the books of Russell & Sidebotham. From our reading of petitioners' argument on brief, however, it appears to be their position that the above paragraphs of the stipulation prove the validity and worth of the alleged debt. Even if in limine the petitioners so misunderstood the stipulation, we believe that they were *411 nonetheless put on notice at the hearing that respondent did not concede the validity of the debt or the fact that it had any value at the beginning of the taxable year when counsel for respondent repeatedly assailed the debt's validity and attempted through his questioning to discover the origin of the entries. Petitioners had ample opportunity to introduce evidence establishing how the debt arose and what basis existed for the bookkeeping entries but failed to prove these facts. On cross examination the evidence was conflicting. At one point Harlow M. Russell testified that the debt arose as the result of sales of machinery and merchandise made by Specialty Automatic Machine Company to Sterling over a period of several years. Later he testified: "* * * I didn't testify they were items of machinery that Specialty Machine Company made for Sterling." Sidebotham, the other partner, had no recollection as to how the debt arose. Although the ledger sheet of Russell & Sidebotham containing the Sterling account was used by witnesses as an aid in answering questions on cross examination by respondent's counsel, this document was not introduced in evidence. The testimony with respect to *412 the entries in this account was too confusing to support a positive finding; however, it appears probable from the testimony of the petitioners' bookkeeper, as well as other testimony of Harlow M. Russell and certain statements made by counsel for petitioners on brief, that a substantial portion of the alleged debt was in fact the balance of alleged debts owed to other of the Russell enterprises and transferred to the partnership books of Russell & Sidebotham when this partnership was formed in 1939. Any such debts may or may not have had value when they were first entered on the books of Russell & Sidebotham. The record is certainly no help in this request. In any situation as in the case before us where the parties to the claimed bad debt are closely related, the transaction warrants close scrutiny. There is nothing in the record before us to establish that the debts were ever valid or that they had any value at the beginning of the taxable year. Further, even if we were to proceed on the hypothesis that the debts had value at the beginning of the year, the evidence presented fails to prove that they became worthless during the taxable year. Petitioners argue that the suit brought *413 by the Borough of East Rutherford to evict Sterling from the leased premises was an identifiable event which rendered its leasehold improvements valueless and gave birth to a substantial claim for back rent and damages, thereby causing Sterling to become insolvent. This claim was only contingent when the alleged debt was written off, and when an action in law was later commenced to evict Sterling, Sterling not only contested the action but filed a counterclaim. As we indicated in our findings of fact, the case was settled, the property sold at public auction to Sterling for $28,000 and was later disposed of by Sterling in consideration for a payment of $60,000. Furthermore, as of December 31, 1942, the balance sheet of Sterling, as shown on Schedule L of its 1942 income tax return, showed current assets totaling $68,505.22, which apparently would have been available for payment of the debt, disregarding the value of the leasehold improvements and the bookkeeping entries with respect to the alleged debts owed to the related Russell enterprises. Harlow M. Russell admitted that no attempt was ever made to collect the debt and it appears that he merely decided that because the prospects *414 of Sterling continuing in business appeared dim the account should be written off. The state of the record certainly does not show that Sterling was insolvent when the bad debt was written off, and we have not been able to find therein any identifiable event which would have rendered the alleged debt worthless during the taxable year in question. Having failed to prove either that the debt in question had any validity or any worth at the beginning of the taxable year, and having failed to prove any identifiable event which would render the alleged debt worthless, the petitioners have failed to prove that they are entitled to the bad debt deductions claimed. Accordingly, we held that respondent did not err in denying the same. The third issue presented concerns the question whether the Russell Box Company was entitled to a deduction for a loss in 1943 on the sale of certain machinery. It is the respondent's position, with which we agree, that there was never a bona fide sale of the machinery in question in the taxable year 1943. The legal title of the machinery was in fact transferred to an employee of a selling agent on December 29, 1943. But that is not enough. To support a *415 loss, a sale must be bona fide. ; . Downs, the alleged purchaser, held title for a period of only 30 days and then conveyed title to Harlow M. Russell. Downs paid no consideration for the property, never obtained possession of it; he was entitled to sell it to a third party but for not less than $30,000, and if he obtained a purchaser who was willing to pay in excess of $30,000 he understood that any such excess would accrue to the benefit of the Russell interests after the deduction of his commission. We hold that the respondent did not err in denying the deductior for this claimed loss. In view of the fact that the amount stated as the deficiency of petitioner Sidebotham is at variance with the amount of the deficiency as computed in the schedule accompanying the notice, this discrepancy will be resolved by the parties in accordance with Rule 50. In Docket Nos. 28703, 28704, 28705 and 28706, decisions will be entered for the respondent. In Docket No. 28707, decision will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Harlow M. Russell, Docket No. 28704; Susan V. Russell, Docket No. 28705; Waldo B. Russell and Marion P. Russell, Docket No. 28706; Melvin H. Sidebotham, Docket No. 28707.↩
*. In Schedule 2 attached to the notice, respondent's computation in arriving at the deficiency showed the amount of the deficiency to be $1,850.72.↩
2. SEC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of - * * *
(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate, except expenditures for the development of mines or deposits deductible under section 23 (cc);↩